UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JA QURE AL-BUKHARI, :
    Plaintiff, :
     :
v. : No. 3:16-cv-1428 (SRU)
     :
SCOTT SEMPLE, et al., :
    Defendants :

# INITIAL REVIEW ORDER

Ja Qure Al-Bukhari, incarcerated and *pro se*, has filed a complaint pursuant to 42 U.S.C. § 1983 against Commissioner Scott Semple, Warden Anne Cournoyer, Warden William Mulligan, Lieutenant Tuttle, Lieutenant Porylo, Lieutenant Guimond, Lieutenant Bradley, Correction Officer Wemmel, Correction Officer Schmidt, Correction Officer McCarthy, Correction Officer Bogan, Correction Officer John Doe 1, Correction Officer John Doe 2, Correction Officer John Doe 3, Nurse Nancy Hill, and Nurse Kristen Carabine, all of whom are employees of the Connecticut Department of Correction. Al-Bukhari is suing all sixteen defendants in their individual and official capacities for acting with deliberate indifference to his medical needs, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Al-Bukhari is also suing defendants Porylo, Doe 1, Doe 2, and Doe 3 in their individual and official capacities for excessive force under the Eighth and Fourteenth Amendments, denial of due process under the Fifth and Fourteenth Amendments, and common law assault. Al-Bukhari seeks declaratory, injunctive, and monetary relief against all defendants for the alleged violations. For the reasons set forth below, the complaint will be dismissed in part.

    I.  Factual Allegations

Al-Bukhari's complaint alleges the following facts:

Al-Bukhari was at all relevant times incarcerated at Northern Correctional Institution in Somers, Connecticut. The Department of Correction ("DOC") has classified Al-Bukhari as a seriously mentally ill inmate, who has been diagnosed with several mental disorders, including bipolar disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and antisocial personality disorder. Al-Bukhari suffers from suicidal ideations and has been taking medication to treat his ailments since childhood. He often engages in acts of self-harm.

On March 9, 2016, Al-Bukhari covered his cell window in violation of DOC policy, which prompted a correction officer to notify the lieutenant's office. By the time Lieutenants Porylo and Guimond and other correctional staff responded to the call and arrived at Al-Bukhari's cell, Al-Bukhari had removed the covering from the window. Nevertheless, the lieutenants ordered one correctional officer to activate a handheld camcorder and other officers to handcuff Al-Bukhari, but Al-Bukhari refused. Lieutenant Porylo also ordered Al-Bukhari, who was naked at the time, to clothe himself, but Al-Bukhari refused to do so. His refusal prompted Porylo to spray a chemical agent on his genital area and buttocks until he submitted to being handcuffed. Porylo and Correction Officers Doe 1, Doe 2, and Doe 3 then entered his cell, subdued him and restrained him in handcuffs.

After restraining Al-Bukhari, the officers attempted to clothe him with underwear but placed the underwear on him improperly. When the officers escorted Al-Bukhari out of his cell, the combination of the improper placement of his underwear and a wet floor caused Al-Bukhari to lose his balance and start to fall. As he tried to regain his balance, Doe 1, Doe 2, and Doe 3 "slammed" Al-Bukhari on the ground and Porylo again sprayed chemicals on his back, arms, and

2

the back of his head. Other inmates housed in the area witnessed the event and ridiculed Al-Bukhari, whose genitalia was exposed due to the improper placement of his underwear.

While on the ground and subdued, Doe 1, Doe 2, and Doe 3 attempted to turn Al-Bukhari's head so that Porylo could spray him in the face, but were unsuccessful. The officers repeatedly yelled at Al-Bukhari to "stop resisting!" even though Al-Bukhari was not doing so. After the struggle, the officers picked up Al-Bukhari from the ground and escorted him to the medical screening room. There, Al-Bukhari requested a shower to wash off the chemical agent with which Porylo had sprayed him, but Porylo and Nurse Carabine denied his request, which caused him to suffer from intermittent burning of his back, arms, genitals and buttocks.

At some point, Al-Bukhari "threatened to self-harm by banging his head on hard surfaces." This prompted Porylo to order the placement of Al-Bukhari in "four-point restraints" for several hours, during which Al-Bukhari continued to suffer from intense burning from the chemical agent. Afterward, Porylo and the officers returned Al-Bukhari to his cell, removed the "four-point restraints," and placed "in-cell restraints" on him. Al-Bukhari was denied soap, water and toilet paper to clean himself.

The next day, while still restrained in his cell, Al-Bukhari defecated on himself. He reported what he had done to Correction Officers Wemmel, Schmidt, McCarthy and Bogan and requested medical services and the opportunity to clean himself, but the officers denied his requests. Despite multiple tours of Al-Bukhari's cell, Wemmel, Schmidt, McCarthy and Bogan never reported that Al-Bukhari had defecated on himself. Unable to obtain assistance, Al-Bukhari covered his cell window, which was stained with feces. This prompted Officer Bogan to notify Lieutenant Tuttle, who came to Al-Bukhari's cell. Al-Bukhari notified Tuttle of his

problem and again requested medical services, but Tuttle denied his request and told Al-Bukhari to "cut the shit out." In addition to denying his medical request, Tuttle, Wemmel, Schmidt, McCarthy, and Bogan "taunted and mocked" Al-Bukhari for defecating on himself. Eventually, a mental health social worker came to Al-Bukhari's cell for unrelated reasons, learned of his situation, and assured him that he would notify the lieutenant's office.

A short time later, Lieutenants Bradley and Guimond came to Al-Bukhari's cell to address the situation. Initially, Bradley denied Al-Bukhari's request for a shower and medical services, and Al-Bukhari began banging his head on the cell door. Officers again brought Al-Bukhari to the medical unit and permitted him to take a shower but denied him adequate soap to wash off the chemical agent, which was still causing him pain.

Al-Bukhari was physically restrained for a total of thirty-six hours. During that time, he complained to Nurses Hill and Carabine that the restraints were causing him muscle spasms and pain in his neck, back and shoulders due to his degenerative joint disease, but Hill and Carabine informed him that "there[] [was] nothing they [could] do because [Al-Bukhari] was in custody restraints."

II. Relevant Legal Principles

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell*

4

*Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

   III. <u>Analysis</u>

      A. <u>Claims Against Defendants in their Official Capacities for Monetary Damages</u>

To the extent Al-Bukhari is suing all sixteen defendants in their official capacities for monetary damages, such claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (Eleventh Amendment protects state officials sued for damages in their official capacities); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Congress did not intend for section 1983 claims to override state's Eleventh Amendment immunity). All claims for monetary damages against the defendants in their official capacities are, therefore, dismissed.

      B. <u>Eighth Amendment Claims</u>

A prison official's deliberate indifference to a prisoner's medical needs violates the Eighth Amendment's protection against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious and that the defendants acted with a

sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105). There are objective and subjective components to the deliberate indifference standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious," meaning that it must be "one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin¸* 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *Id.*; *Salahuddin v. Goord*, 467 F.3d 263, 280-81 (2d Cir. 2006). A claim that a prison official acted negligently with respect to the prisoner's medical needs does not rise to the level of deliberate indifference and is not cognizable under section 1983. *Hathaway v. Coughlin*, 99 F.3d at 553; *Salahuddin v. Goord*, 467 F.3d at 280.

Al-Bukhari alleges that all sixteen defendants violated his Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference to his medical needs in various ways. I will address each Eighth Amendment claim in turn.

1. <u>Deliberate Indifference Claim Against Commissioner Semple, Warden Cournoyer, and Warden Mulligan</u>

Al-Bukhari alleges that Commissioner Semple, Warden Cournoyer, and Warden Mulligan knew about his medical and mental health needs because they "were provided with [his] medical and psychological records" and, nevertheless, "permitted subordinates to obtain and use high[ly] concentrated chemical agents generally against inmates knowing that [they] cause[] unnecessary burning." He also alleges that these three defendants "knew that seriously ill inmates such as [Al-Bukhari] should not be placed in in-cell restraints absent professional

6

judgment and subject to medical supervision" and permitted subordinates to place him in such restraints for unnecessarily long periods of time, thereby exacerbating his degenerative joint disease and causing him constant pain. Al-Bukhari claims that the culmination of these actions amounted to deliberate indifference to medical needs, in violation of the Eighth Amendment to the United States Constitution.

"It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to act on information indicating that unconstitutional acts were occurring. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Construing his complaint liberally, Al-Bukhari has stated a plausible Eighth Amendment claim against Commissioner Semple, Warden Cournoyer, and Warden Mulligan in their official capacities. Al-Bukhari does not allege that these three defendants participated in or failed to remedy the wrongful acts on March 9 and 10, 2016. He also does not allege that they were

7

grossly negligent in managing their subordinate officers or failed to act on information that their subordinate officers were engaging in unconstitutional behavior. Al-Bukhari does allege, however, that these defendants perpetuated an unconstitutional policy of using harmful chemical agents against inmates and placing inmates with medical problems in "in-cell" restraints for unnecessarily long periods of time and he requests a change in such policy as a form of injunctive relief. For that reason, Al-Bukhari's allegations sufficiently state an Eighth Amendment claim against Commissioner Semple, Warden Cournoyer, and Warden Mulligan in their official capacities. However, because none of these three defendants were allegedly involved in or knew about the specific incidents about which Al-Bakhari is complaining, the claims against them in their individual capacities are dismissed.

2. Deliberate Indifference Claim Against Remaining Defendants

Al-Bukhari sufficiently alleges that the remaining defendants were personally involved in the events of March 9 and 10, 2016, which gave rise to Eighth Amendment violations. He alleges that he informed the correctional officers and nurses that he was suffering from extreme pain as a result of being sprayed with a chemical agent and the staff repeatedly denied his requests for an adequate shower to clean himself and decontaminate the agent. He also alleges that the staff denied his request to clean himself after he had defecated on himself in his cell. I conclude that Al-Bukhari has alleged sufficient personal involvement of the correctional officers and nurses in the events of March 9 and 10, 2016, and has stated a plausible claim of deliberate indifference to medical needs against those defendants in their individual [and official] capacities. Thus, Al-Bukhari's deliberate indifference claim may proceed against defendants

Tuttle, Porylo, Guimond, Bradley, Wemmel, Schmidt, McCarthy, Bogan, Hill, Carabine, and Does 1-3[1] in their individual capacities.

### 3. Excessive Force Claim Against Lieutenant Porylo, Officer Doe 1, Officer Doe 2, and Officer Doe 3

Al-Bukhari alleges that Lieutenant Porylo and Correction Officers Doe 1, Doe 2, and Doe 3 violated his Eighth Amendment protection against cruel and unusual punishment by using excessive physical force against him in their efforts to remove him from his cell. His allegation constitutes a plausible Eighth Amendment claim.

"The use of excessive force against a prisoner may constitute cruel and unusual punishment in violation of Eighth Amendment." *Moore v. Murray*, 2017 WL 396139, at *3 (D. Conn. Jan. 27, 2017) (citing *Wilkins v. Gaddy*, 559 U.S. 34 (2010)). The inquiry into determining whether an excessive force claim exists "is not whether a certain quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (internal quotation marks omitted).

Here, Al-Bukhari alleges that, after placing him in handcuffs and while removing him from his cell, Lieutenant Porylo and the three unnamed correction officers "slammed" Al-Bukhari on the ground and sprayed him with a harmful chemical agent, even though Al-Bukhari had not been resisting their efforts to escort him out of the cell. Al-Bukhari has stated a plausible excessive force claim against these four defendants in their individual capacities for monetary damages.

### C. Fifth Amendment Claim

---

[1] Al-Bukhari's claims against the three unnamed correction officers (John Doe 1, John Doe 2, and John Doe 3) will only proceed if he complies with this Court's order of ascertaining their first and last names in discovery. *See* Order # 4, *infra* at 13.

Al-Bukhari alleges that Lieutenant Porylo and the three unnamed correction officers also violated his Fifth Amendment right to due process by subjecting him to "unreasonable bodily restraints." The Fifth Amendment applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (Fifth Amendment due process applies to federal government actors whereas Fourteenth Amendment due process applies to state actors); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009) (due process claim against city properly brought under Fourteenth Amendment, not Fifth Amendment). Al-Bukhari has not raised a claim against any federal government representative. Thus, his Fifth Amendment claims must be dismissed.

D. Fourteenth Amendment Claims

Al-Bukhari has raised substantive due process claims under the Fourteenth Amendment in conjunction with his Eighth Amendment claims for deliberate indifference to medical needs and excessive force. Because Al-Bukhari's claims are covered by the Eighth Amendment protection against cruel and unusual punishment, his substantive due process claims under the Fourteenth Amendment are duplicative and, therefore, subject to dismissal. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (generalized notion of substantive due process under Fourteenth Amendment not applicable where other amendment provides explicit textual source of constitutional protection against alleged government conduct). Therefore, Al-Bukhari's Fourteenth Amendment claims are dismissed.

E. State Law Claim

In addition to his excessive force claim, Al-Bukhari also alleges that Lieutenant Porylo and Correction Officers Doe 1, Doe 2, and Doe 3 committed common law assault against him

"by subjecting [him] to arbitrary bodily restraints," causing him mental and physical harm. Pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), the district court can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham*, 490 U.S. at 386. I can exercise supplemental jurisdiction over Al-Bakhari's state-law assault claim because it arises out of the same set of facts as his Eighth Amendment claims of deliberate indifference to medical needs and excessive force against the same defendants. *See id.* at 1073 (court should exercise supplemental jurisdiction over state common law assault claim when federal constitutional claim of excessive force and assault claim are so tightly interwoven that decision on former will collaterally estop litigation of latter). At this stage of the proceeding, it appears that Al-Bukhari's Eighth Amendment claims and assault claim are sufficiently related in fact and, therefore, I will permit the common law assault claim to proceed against Lieutenant Porylo and the three unnamed correction officers in their individual capacities.

    F.  <u>Declaratory Relief</u>

As a remedy for his constitutional claims, Al-Bukhari seeks "[a] declaratory judgment that the actions of [the] [d]efendants violated the . . . Eighth . . . Amendment[] to the United States Constitution as well [as] the state law." Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public*

*Accountants*, 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustible Equip. Assoc.*, 838 F.2d 35, 37 (2d Cir. 1988). Al-Bukhari's complaint contains a request for injunctive relief, which he will be permitted to pursue against Commissioner Semple, Warden Cournoyer, and Warden Mulligan, in their official capacities. He has not identified any other prospective legal relationships or issues that require resolution via declaratory relief. Thus, his request for declaratory relief based on past conduct is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). *See Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

IV. Conclusion

It is hereby ordered that:

**(1)** The claims for monetary damages against all defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Fifth and Fourteenth Amendment claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claim shall proceed against Commissioner Semple, Warden Cournoyer, and Warden Mulligan only in their official capacities for injunctive relief. The Eighth Amendment claim for deliberate indifference to medical needs shall proceed against each remaining defendant in their individual capacities for monetary relief. The Eighth Amendment claim for excessive force shall proceed against Lieutenant Porylo and Correction Officers John Doe 1, John Doe 2, and John Doe 3 (if their names are discovered) in their individual capacities for monetary relief. The common law assault claim shall proceed against Lieutenant Porylo and Correction Officers John Doe 1, John

Doe 2, and John Doe 3 (if their names are discovered) in their individual capacities for monetary relief.  Al-Bukhari's request for declaratory relief is **DISMISSED**.

**(2)** **Within twenty-one (21) days of this Order**, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on defendants Semple, Cournoyer, and Mulligan in their official capacities by delivering one copy of the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

**(3)** The Clerk shall verify the current work addresses for defendants Tuttle, Porylo, Guimond, Bradley, Wemmel, Schmidt, McCarthy, Bogan, Hill, and Carabine with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day after mailing**.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

**(4)** Because Al-Bukhari has not identified Correctional Officers John Doe 1, John Doe 2, and John Doe 3 by name, the Clerk is not able to serve a copy of the complaint on those defendants in their individual capacities.  Al-Bukhari must, **within ninety (90) days of the date of this order**, conduct discovery and file a notice indicating the first and last name of those three defendants.  If Al-Bukhari files the notice, the Court will direct the Clerk to effect service of the complaint on those defendants in their individual capacities.  If Al-Bukhari fails to identify those

defendants within the time specified, the claims against them will be dismissed pursuant to Fed. R. Civ. P. 4(m).

**(5)** Defendants Semple, Cournoyer, Mulligan, Tuttle, Porylo, Guimond, Bradley, Wemmel, Schmidt, McCarthy, Bogan, Hill, and Carabine shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them**. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(6)** Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed **within six months (180 days) from the date of this order**. Discovery requests should not be filed with the court.

**(7)** All motions for summary judgment shall be filed **within seven months (210 days) from the date of this order**.

SO ORDERED at Bridgeport, Connecticut this 16th day of May 2017.

/s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge